**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,**

**and**

**George Dial, Intervener,**

**v.**

**RAYTHEON TECHNICAL SERVICES COMPANY, a subsidiary of Raytheon Company, Inc., Defendant.**

**No. CV02–00735 DAE/LEK.**

United States District Court, D. Hawai'i.

March 12, 2004.

Jonathan T. Peck, William R. Tamayo, Raymond T. Cheung, Equal Employment Opportunity Commission, San Francisco District Office, San Francisco, CA, Elizabeth Jubin Fujiwara, Wilfredo O. Tungol, Equal Employment Opportunity Commission, Honolulu Local Office, Honolulu, HI, for Equal Employment Opportunity Commission, plaintiff.

Andrew L. Pepper, Carlsmith Ball LLP, Honolulu, HI, Nichole K. Shimamoto, Marr Hipp Jones & Wang, Honolulu, HI, for Raytheon Technical Services Company, a subsidiary of Raytheon Company, Inc., defendant.

## ORDER GRANTING PLAINTIFF–INTERVENER'S MOTION FOR SUMMARY JUDGMENT AS TO CERTAIN DEFENSES

DAVID ALAN EZRA, Chief Judge.

The court heard Plaintiff–Intervener's Motion on March 9, 2004. Carl M. Varady, Esq., appeared at the hearing on behalf of Plaintiff–Intervener; Wilfredo Tungol, Esq., appeared at the hearing on behalf of Plaintiff; Andrew L. Pepper. Esq., appeared at the hearing on behalf of Defendant. After reviewing the Motion and the supporting and opposing memoranda, the court GRANTS Plaintiff–Intervener's Motion for Summary Judgment as to Certain Defenses.

### BACKGROUND

#### A. FACTUAL BACKGROUND

Plaintiff–Intervener George Dial ("Dial") states that he is an African–American who was employed by Kalama Services as a journeyman painter on Johnston Island in 2000. Johnston Island is located approximately 717 nautical miles southwest of Honolulu. Dial claims that Defendant Raytheon Technical Services Company ("Raytheon") replaced Kalama and adver-

tised that it was seeking to hire individuals to perform similar work to the work that had been performed for Kalama, including the painting that Dial had previously done. According to Dial, he sent an employment application to Raytheon's Honolulu office, but was not hired. Instead, Dial asserts that Raytheon hired some individuals who had less experience and were less qualified than he was. Dial maintains that Raytheon's decision not to hire him forced him to move to the mainland, where he has been unable to locate any type of employment despite repeated attempts to obtain work.

It appears that Dial contacted the Equal Employment Opportunity Commission ("EEOC") about his belief that Raytheon had discriminated against him in failing to offer him employment. Dial contends that on April 8, 2002, the EEOC sent him a Determination that stated that "there was reasonable cause to believe that Mr. Dial was not hired because of his race, that Raytheon hired less-qualified persons because of race and that reasons given by Raytheon for not hiring Mr. Dial were pretextual." Plaintiff–Intervener's Motion for Summary Judgment as to Certain Defenses, at 2. On November 18, 2002, the EEOC filed its Complaint against Raytheon, alleging that Raytheon had violated Title VII of the Civil Rights Act of 1963, as amended. Dial filed his Complaint in Intervention on May 28, 2003.

## B. PROCEDURAL BACKGROUND

On December 3, 2003, Plaintiff–Intervener filed a Motion for Partial Summary Judgment as to Certain Defenses ("Motion"). Defendant filed its Memorandum in Opposition to Plaintiff–Intervener's Motion on February 12, 2004 ("Opposition"). On February 19, 2004, Plaintiff–Intervener filed his Reply to Defendant's Opposition ("Reply").

## STANDARD OF REVIEW

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The moving party has the initial burden of "identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

If the moving party meets its burden, then the opposing party may not defeat a motion for summary judgment in the absence of any significant probative evidence tending to support its legal theory. *Commodity Futures Trading Comm'n v. Savage,* 611 F.2d 270, 282 (9th Cir.1979). The opposing party can neither stand on its pleadings, nor can it simply assert that it will be able to discredit the movant's evidence at trial. *T.W. Elec. Serv.,* 809 F.2d at 630; Fed.R.Civ.P. 56(e). In a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party. *State Farm Fire & Cas. Co. v. Martin,* 872 F.2d 319, 320 (9th Cir.1989).

## DISCUSSION

In Defendant's Answer to Dial's Complaint in Intervention, Defendant has argued that this court lacks subject matter jurisdiction over this suit because pursuant to the Territories and Insular Possessions Act ("TIPA"), 48 U.S.C. § 644(a), Title VII and the Commerce Clause do not apply to incidents occurring on Johnston Island. Dial, however, claims that Title VII does apply to incidents occurring on Johnston Island. No court has specifically consid-

ered the question, and consequently, this is an issue of first impression.

Defendant has argued that TIPA precludes the court from having jurisdiction in this matter. TIPA is legislation that establishes the jurisdiction of the United States District Court for the District of Hawai'i over cases arising on or within the Midway Islands, Wake Island, Sand Island, Johnston Island, and other islands. 48 U.S.C. § 644a (2000). The statute states that

> [t]he jurisdiction of the United States District Court for the District of Hawai'i is extended to all civil and criminal cases arising on or within the Midway Islands, Wake Island, Johnston Island, Sand Island, Kingman Reef, Palmyra Island, Baker Island, Howland Island, Jarvis Island, and, having regard to the special status of Canton and Enderbury Island . . . the said jurisdiction is also extended to all civil and criminal cases arising on or within Canton Island and Enderbury Islands. . . . All civil acts and deeds consummated and taking place on any of these islands or in the waters adjacent thereto, and all offenses and crimes committed thereon, or on or in the waters adjacent thereto, shall be deemed to have been consummated or committed on the high seas on board a merchant vessel or other vessel belonging to the United States and shall be adjudicated and determined or adjudged and punished according to the laws of the United States relating to such civil acts or offenses on such ships or vessels on the high seas, which laws for the purpose aforesaid are extended over such islands, rocks, and keys.

48 U.S.C. § 644a (2003).

Defendant maintains that Congress adopted TIPA to establish the federal question substantive law of Johnston Island and the other named islands in the Pacific Ocean. Defendant's Opposition, at 13 (citing H.R.Rep. No. 81–1280 (1949)). Defendant asserts that because of TIPA, "a non-maritime statute can only be enforceable as to an act 'consummated or committed' on Johnston Island if the statute specifically states that it applies to the Island." Id.

Consequently, the court considers whether Title VII specifically states that it applies to Johnston Island. Title VII defines "commerce" as "trade, traffic, commerce, transportation, transmission, or communication among the several States; or between a State and any place outside thereof; or within the District of Columbia, or a possession of the United States; or between points in the same State but through a point outside thereof." 42 U.S.C. § 2000e(g) (2003). The statute further defines a "State" as "a State of the United States, the District of Columbia, Puerto Rico, the Virgin Islands, American Samoa, Guam, Wake Island, the Canal Zone, and Outer Continental Shelf lands defined in the Outer Continental Shelf Lands Act." Id. at § 2000e(i). Defendant argues that Congress intentionally omitted Johnston Island from the geographic areas specifically covered by Title VII because it is not included in the statute's definition of a "State". Defendant's Opposition, at 20. Defendant points out that Congress specifically stated that Title VII applies to Wake Island, a geographic area that is also covered by TIPA; however, Congress made no specific mention of Johnston Island in the statute's definition of a "State". Defendant suggests that the statutory construction principle of expressio unius est exclusio alterius ("the expression of one thing is the exclusion of another") should encourage the court to conclude that Congress intended to exclude Johnston Island from Title VII's coverage.

To further support its argument, Defendant asserts that this omission was not

accidental and must be viewed in the context of the times. *Id.* Defendant states that at the time Congress passed the Civil Rights Act, the United States and the Soviet Union were engaged in the Cold War, and Johnston Island was the principle site for the testing and development of nuclear weapons. *Id.* Defendant alleges that Congress consequently excluded Johnston Island from a number of regulatory schemes because of its national security role. For instance, Defendant asserts that access to the island was restricted, along with air travel and entry without prior military authorization. *Id.* at 20–21.

Defendant also contends that around the same time that Congress enacted Title VII, it also enacted several other statutes that specifically listed Johnston Island when delineating the geographic entities covered in the definition of the term "commerce". *Id.* at 22. To illustrate its point, Defendant cites 15 U.S.C. § 1332(3), which regulates cigarette labeling and advertising. Defendant argues that the specific naming of Johnston Island in this statute illustrates that Congress was well aware of the existence of Johnston Island during this time and the need to include it in certain statutes. *Id.* Moreover, Defendant states that during this time, Congress declined to include Johnston Island within the list of geographic entities covered by the Employee Retirement Income Security Program ("ERISA"), 29 U.S.C. § 1002(10), and the Labor Management Reporting and Disclosure Procedure Act, 29 U.S.C. § 402(b). *Id.* at 23–24.

In response, Plaintiff–Intervener Dial argues that Title VII not only applies to commerce occurring in "States", as defined by the statute, but it also applies to possessions of the United States. Plaintiff–Intervener's Motion, at 9. Plaintiff–Intervener further asserts that because of Title VII's remedial purpose, it must be construed broadly to effectuate its underlying goals. *Id.* at 9–10.

■ In examining the language of Title VII, the court agrees with Plaintiff–Intervener that Congress drafted the statute to cover not only States, as defined by the statute, but also possessions. The exact language states that the statute applies to commerce "among the several States; or between a State and any place' outside thereof; or within the District of Columbia, or a *possession* of the United States." 42 U.S.C. § 2000e(g) (2000) (emphasis added). Consequently, it is not dispositive that the statute does not include Johnston Island in the definition of a "State." Defendant does not dispute that Johnston Island is a possession of the United States. *See* Defendant's Response, at 5.

■ Furthermore, it is well-recognized that when courts interpret remedial statutes such as Title VII, they are to construe them broadly to effectuate their purposes. *Moyo v. Gomez,* 32 F.3d 1382, 1386 (9th Cir.1994) (citation omitted). In the House Report discussing the 1991 Amendments to Title VII, Congress made clear that "[w]hen the terms of such a statute are susceptible to several alternative interpretations, the courts, consistent with the intent of the Congress in enacting that law, are to select the construction which most effectively advances the underlying congressional purpose." H.R. Rep. 102–40, at *88, 1991 U.S.C.C.A.N. 549, 626. The Ninth Circuit has recognized that the purpose of Title VII is "to *expand* employees' rights and *increase* the possible remedies available to civil rights plaintiffs." ' *EEOC v. Luce,* 345 F.3d 742, 749 (9th Cir.2003) (emphasis in original) (citations omitted).

■ Consequently, when considering the meaning of the word "possession" that is included in Title VII's definition of "commerce", this court interprets this

word to include Johnston Island, since Congress has not explicitly stated that this term does not apply to Johnston Island. In making this determination, the court rejects Defendant's argument that it is instructive that Congress did not include Johnston Island in the definition of "State," along with Wake Island. Moreover, while Defendant has argued that Congress has intentionally excluded Johnston Island from coverage in some statutes in the past because of security reasons, Defendant has offered no explanation why security reasons would be advanced if Title VII did not apply to Johnston Island. The court acknowledges that Congress did not include Johnston Island in the list of geographic entities specifically covered by ERISA and the Labor Management Reporting and Disclosure Procedure Act. However, Title VII is different from these two statutes because Congress has explicitly stated that Title VII applies to "possessions." On the other hand, ERISA defines "commerce" as "trade, traffic, commerce, transportation, or communication between any State and any place outside thereof." 29 U.S.C. § 1002(11) (2003). Similarly the Labor Management Reporting and Disclosure Procedure Act defines "commerce" as "trade, traffic, commerce, transportation, or communication among the several States or between any State and any place outside thereof." 29 U.S.C. § 402(a) (2003).

The court also finds compelling Dial's argument that an absurd result would occur if Title VII does not apply to Johnston Island because Congress and the courts have made clear that this statute applies to American citizens working for American companies in foreign countries. Dial has argued that in response to Supreme Court decisions that suggested otherwise, Congress amended Title VII in 1991 to make clear that the definition of "employee" included American citizens employed by American companies in foreign countries. Plaintiff–Intervener's Reply, at 12 (citing 42 U.S.C. § 2000e(f) (2003)). *See also Kang v. U. Lim America, Inc.,* 296 F.3d 810, 816 (9th Cir.2002) (recognizing that Title VII's definition of "employee" included American citizens employed by American companies abroad). The court agrees with Dial that it is unlikely that Congress would intend for Title VII to apply to U.S. citizens employed by U.S. companies in foreign countries, but not to U.S. citizens employed by U.S. companies on Johnston Island, a U.S. possession.

In conducting its analysis of this issue, the court has reviewed the case law cited by the parties and finds that none of it is directly on point. However, regardless of this fact, the statute explicitly defines "commerce" as "trade, traffic, commerce, transportation, transmission, or communication among the several States; or between a State and any place outside thereof; or within the District of Columbia, or a *possession* of the United States." 42 U.S.C. § 2000e(g) (2003) (emphasis added). The parties do not dispute that Johnston Island is a possession of the United States. Consequently, construing the statute broadly, the court concludes that Johnston Island is included within the coverage of Title VII.

## CONCLUSION

For the reasons stated above, the court GRANTS Plaintiff–Intervener's Motion for Summary Judgment as to Certain Defenses.

IT IS SO ORDERED.