NOT FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER

Electronically Filed
Intermediate Court of Appeals
CAAP-19-0000855
26-SEP-2022
07:59 AM
Dkt. 61 SO

NO. CAAP-19-0000855

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

AL R. NACINO, Plaintiff-Appellant,
v.
CAMBRIDGE MANAGEMENT, INC., Defendant-Appellee,
and
JOHN DOES 1-5; JANE DOES 1-5; DOE CORPORATIONS 1-5; DOE LLCS 1-5; DOE PARTNERSHIPS 1-5; DOE NON-PROFIT ORGANIZATIONS 1-5; and DOE GOVERNMENTAL AGENCIES 1-5, Defendants

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(Civil No. 1CC161001853)

**SUMMARY DISPOSITION ORDER**
(By: Ginoza, Chief Judge, Hiraoka and McCullen, JJ.)

Plaintiff-Appellant Al R. **Nacino** appeals from the **Final Judgment** in favor of Defendant-Appellee **Cambridge** Management, Inc. entered by the circuit court on November 19, 2019.[1] For the reasons explained below, we vacate the Final Judgment and remand for further proceedings not inconsistent with this summary disposition order.

In 2012, Nacino sued his then-employer, Cambridge, his supervisor, and his supervisor's manager (the **Discrimination Lawsuit**). Nacino's complaint alleged that the defendants had discriminated against him in violation of Hawaii Revised Statutes

---

[1] The Honorable Jeffrey P. Crabtree presided.

(**HRS**) § 378-2.[2]  Cambridge terminated Nacino's employment the next month.  The defendants ultimately obtained a summary judgment, from which Nacino did not appeal.

In 2016, Nacino filed the action below.  The complaint alleged that Cambridge's termination of Nacino's employment in 2012 violated HRS § 378-2(a)(2) (2015).  The statute provided, in relevant part:

> **§378-2  Discriminatory practices made unlawful; offenses defined.**  (a) It shall be an unlawful discriminatory practice:
>
> . . . .
>
> (2)  For any employer . . . to discharge . . . any individual because the individual has . . . filed a complaint . . . respecting the discriminatory practices prohibited under this part[.]

Cambridge moved for summary judgment (**MSJ**).  Cambridge argued it did not violate HRS § 378-2(a)(2) because the Discrimination Lawsuit was not based upon <u>actual</u> "discriminatory practices prohibited under" HRS Chapter 378.  On October 1, 2019, the court entered an order granting Cambridge's MSJ.  The Final Judgment was entered on November 19, 2019.  This appeal followed.

Nacino raises two points of error: **(1)** the circuit court erred by ruling on the MSJ before Nacino could take the deposition of the Cambridge supervisor who terminated his employment; and **(2)** the circuit court erred by granting the MSJ because there were genuine issues of material fact "as to the real reason for Nacino's termination."

**(1)**  Nacino filed the action below on October 3, 2016. Trial was set for October 7, 2019; the deadline to conduct

---

[2]      HRS § 378-2(a) (2015) made it unlawful for an employer to engage in certain conduct that discriminates against an employee "[b]ecause of race, sex, including gender identity or expression, sexual orientation, age, religion, color, ancestry, disability, marital status, arrest and court record, or domestic or sexual violence victim status if the domestic or sexual violence victim provides notice to the victim's employer of such status or the employer has actual knowledge of such status[.]"

discovery was set for August 9, 2019.  Cambridge filed the MSJ after the discovery cutoff.[3]

In opposition to the MSJ, Nacino argued that he had been "trying to depose Ma'rin **Witt** for over a month[.]"  Witt became Nacino's supervisor on August 18, 2011; she signed a declaration on October 31, 2012, that had been offered in the Discrimination Lawsuit to show nondiscriminatory reasons for Nacino's treatment.  Nacino issued a deposition subpoena to Witt on July 31, 2019.  Unsuccessful attempts to serve the subpoena upon Witt were made on August 2, 3, 7, and 8, 2019.

Hawaiʻi Rules of Civil Procedure Rule 56(f) provides:

> Should it appear from the affidavits of a party opposing the motion [for summary judgment] that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court **may** refuse the application for judgment or **may** order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

(Emphasis added.)

Nacino did not explain why he was not able to take Witt's deposition during the more-than-two-year period between the filing of the complaint below and the discovery deadline. Under these circumstances we cannot say the circuit court abused its discretion by not continuing the hearing on the MSJ so that Nacino could take the deposition — after the discovery cutoff — of a witness who had been known to him since the beginning of the lawsuit.

**(2)**  We review a trial court's grant or denial of summary judgment de novo using the same standard applied by the trial court.  Lales v. Wholesale Motors Co., 133 Hawaiʻi 332, 343, 328 P.3d 341, 352 (2014).

> Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

---

[3]     The trial date was continued after Cambridge filed its MSJ; the discovery cutoff was not extended.

3

> moving party is entitled to judgment as a matter of law. A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. The evidence must be viewed in the light most favorable to the non-moving party. In other words, we must view all of the evidence and inferences drawn therefrom in the light most favorable to the party opposing the motion.

Id. (cleaned up).

Nacino's HRS § 378-2(a)(2) retaliation claim against Cambridge is subject to a three-part test:

> [First,] the plaintiff must establish a prima facie case of such retaliation by demonstrating that [they], inter alia, "ha[ve] opposed any practice forbidden by HRS Chapter 378[.]" . . .
>
> [Second,] if the plaintiff establishes a prima facie case of retaliation, the burden shifts to the defendant to provide a legitimate, nondiscriminatory reason for the adverse employment action[.] . . .
>
> [Third,] if the defendant articulates such a reason, the burden shifts back to the plaintiff to show evidence demonstrating that the reason given by the defendant is pretextual.

Lales, 133 Hawai'i at 356-57, 328 P.3d at 365-66 (reformatted) (applying former HRS § 378-2(2) (Supp. 2002))[4] (citing Schefke v. Reliable Collection Agency, Ltd., 96 Hawai'i 408, 426, 32 P.3d 52, 70 (2001)).

The evidence presented on Cambridge's MSJ showed: Nacino began working for Cambridge on September 1, 2004. On May 3, 2011, Nacino filed a charge against Cambridge (the **2011 Charge**) with the Hawai'i Civil Rights Commission (**HCRC**) and the Equal Employment Opportunity Commission (**EEOC**). He alleged discrimination based on color (brown) and national origin or ancestry (Filipino). By letter dated November 17, 2011, the HCRC informed Nacino that it was closing the 2011 Charge, and that Nacino had 90 days to file a private lawsuit.

_____

[4] Although HRS § 378-2 has since been amended, these amendments are not relevant to the instant appeal. See, e.g., 2009 Haw. Sess. Laws Act 1, § 2 at 794-95; 2011 Haw. Sess. Laws Act 34, § 4 at 52-53; 2011 Haw. Sess. Laws Act 206, § 2 at 675-77; 2013 Haw. Sess. Laws Act 248, § 2 at 748-49.

Nacino filed the Discrimination Lawsuit on February 16, 2012. The complaint alleged (among other things) that Cambridge and the other defendants "took adverse employment actions against [Nacino] as a result of his complaints of discrimination, harassment, unfair treatment, unequal pay, unequal hours and disparate treatment." Cambridge terminated Nacino's employment one month after the Discrimination Lawsuit was filed. The court presiding over the Discrimination Lawsuit ultimately ruled that Cambridge did not violate HRS Chapter 378 because the employee who had received more favorable treatment than Nacino was also Filipino and also had brown skin.

Nacino filed the lawsuit below on October 3, 2016. The complaint below alleges (among other things):

> B.  On May 5 [sic], 2011, [Nacino] filed [the 2011 Charge] against [Cambridge] with the HCRC and EEOC.
>
> C.  On February 16, 2012, [Nacino] filed [the Discrimination Lawsuit] against [Cambridge] alleging discrimination in the Circuit Court of the First Circuit.
>
> D.  Within a month of filing [the Discrimination Lawsuit], on March 16, 2012, [Nacino] was informed that he was being terminated from his position of Maintenance Technician.
>
> . . . .
>
> F.  [Nacino] would not have been wrongfully terminated had [Nacino] not filed [the 2011 Charge] with HCRC and EEOC against [Cambridge] and filed the [Discrimination Lawsuit].
>
> G.  [Nacino] was wrongfully terminated by [Cambridge] in retaliation for filing [the 2011 Charge] with the HCRC and EEOC against [Cambridge] and filing [the Discrimination Lawsuit] in Circuit Court as aforesaid.

At trial, Nacino would have the burden of proving that Cambridge terminated his employment because he "opposed any practice forbidden by HRS Chapter 378[.]" Lales, 133 Hawaiʻi at 356, 328 P.3d at 365. HRS § 378-2(a)(2) forbids an employer from terminating an employee's employment "because the individual has . . . filed a complaint . . . respecting the discriminatory practices prohibited under this part[.]" In its MSJ, Cambridge

argued that Nacino could not establish a prima facie case of retaliation.  See Thomas v. Kidani, 126 Hawai'i 125, 130, 267 P.3d 1230, 1235 (2011) (explaining that a defendant without a burden of proof at trial can satisfy its burden as summary judgment movant by showing that the plaintiff cannot establish the existence of an element of the claim at issue).

Viewed in the light most favorable to Nacino, the evidence showed that Cambridge terminated Nacino's employment one month after Nacino filed the Discrimination Lawsuit.  Cambridge does not dispute this timing; however, Cambridge argues that Nacino could not have had an objectively reasonable belief that Cambridge terminated his employment in violation of HRS § 378-2(a)(2) because "[t]he record clearly establishes that [Nacino]'s complaints in his [Discrimination Lawsuit] were not based on any characteristic protected by HRS Chapter 378, and thus, he could not establish the first element of the *prima facie* case for retaliation."

Nacino's Discrimination Lawsuit complaint alleged:

> 21.    [Nacino] has been subjected to adverse employment actions, including but not limited to, (a) failing to be given the pay increase promised by agreement, (b) being unreasonably subjected to a demotion and cut in pay, (3) having his work hours reduced without explanation, (4) being treated differently than a similarly situated co-worker, and (5) suffering false accusations from his supervisors regarding the quality of his work.
>
> 22.    These actions have created a hostile and intimidating work environment for [Nacino].  He has been subjected to harassment, discrimination, retaliation and disparate treatment by [Cambridge] and its supervisors, Bedell and Bradshaw[.]
>
> 23.    [Nacino] complained to [Cambridge] and state agencies about the unlawful treatment he has been subjected to by [Cambridge, Bedell, and Bradshaw].
>
> 24.    As a result of his complaints, [Nacino] has suffered further mistreatment, including but not limited to threats of termination by [Cambridge, Bedell, and Bradshaw] if he refused to accept his demotion and wage/hour reduction and additional unwarranted "write-ups".  [Nacino]'s requests for explanation for the adverse employment actions against him have gone unanswered.  [Cambridge, Bedell, and Bradshaw] have failed to properly address [Nacino]'s inquiries and instead responded with threats of termination and other unlawful employment actions.

. . . .

45.   [Cambridge, Bedell, and Bradshaw's] actions and/or omissions violate Hawaii Revised Statutes § 378-2.

. . . .

50.   [Cambridge, Bedell, and Bradshaw's] actions and/or omissions violate Hawaii Revised Statutes § 378-2.

. . . .

53.   [Cambridge, Bedell, and Bradshaw] singled out [Nacino] and treated him less favorably than others similarly situated.  [Cambridge, Bedell, and Bradshaw's] conduct and actions were motivated by discriminatory intent.

Cambridge terminated Nacino's employment one month after he filed the Discrimination Lawsuit — before that case had been decided on the merits.  The judgment in favor of Cambridge and against Nacino in the Discrimination Lawsuit was entered on April 16, 2015, more than three years after Cambridge terminated Nacino's employment.  Cambridge was ultimately found (in the Discrimination Lawsuit) not to have discriminated against Nacino based on any characteristic protected by HRS Chapter 378 (an outcome from which Nacino did not appeal).  But — viewing the facts in the light most favorable to Nacino — that does not necessarily mean Cambridge could not have terminated Nacino because he filed a lawsuit alleging an HRS Chapter 378 violation.

"There is no requirement that a retaliation claim be based on a successful discrimination claim."  Gonsalves v. Nissan Motor Corp., 100 Hawaiʻi 149, 162-63, 58 P.3d 1196, 1209-10 (2002) (first citing Aloha Islandair Inc. v. Tseu, 128 F.3d 1301, 1304 (9th Cir. 1997) (observing that "the Hawaiʻi statute prohibiting retaliation does not condition the retaliation claim on the merit of the underlying discrimination claim"); then citing Moyo v. Gomez, 32 F.3d 1382, 1385 (9th Cir. 1994), amended by 40 F.3d 982 (9th Cir. 1994) (stating that under Title VII it is not necessary that the employment practice actually be unlawful)).

There must be a "reasonable belief" that the employer has engaged in an unlawful employment practice.  Furthermore, the reasonableness of the employee's belief that an unlawful

7

> employment practice occurred must be assessed according to
> an objective standard — one that makes due allowance,
> moreover, for the limited knowledge possessed by most Title
> VII plaintiffs about the factual and legal bases of their
> claims.  We note again that a reasonable mistake may be one
> of fact or law.  We also note that it has been long
> established that Title VII, as remedial legislation, is
> construed broadly.  This directive applies to the
> reasonableness of a plaintiff's belief that a violation
> occurred, as well as to other matters.

Gonsalves, 100 Hawaiʻi at 163, 58 P.3d at 1210 (cleaned up) (reformatted) (quoting Moyo, 32 F.3d at 1385-86).

The evidence in the record, viewed in the light most favorable to Nacino, could show that Cambridge terminated Nacino's employment because Nacino filed the Discrimination Lawsuit, which alleged a violation of HRS Chapter 378.  That would have been a violation of HRS § 378-2(a)(2).  Under those circumstances, it was error for the circuit court to grant Cambridge's MSJ.  See Lales, 133 Hawaiʻi at 358, 328 P.3d at 367 (noting that evidence of "the temporal proximity (amount [sic] one month) between the complaint and the termination" raised an issue of fact about whether the asserted reasons for the termination were pretext for a discriminatory motive).  Simply stated, the resolution of the Discrimination Lawsuit in favor of Cambridge does not resolve, as a matter of law, the factual question of whether Cambridge fired Nacino in retaliation for Nacino filing the Discrimination Lawsuit.

For the foregoing reasons, the Final Judgment entered by the circuit court on November 19, 2019, is vacated, and this case is remanded to the circuit court for further proceedings not inconsistent with this summary disposition order.

DATED:  Honolulu, Hawaiʻi, September 26, 2022.

On the briefs:

Earle A. Partington,
for Plaintiff-Appellant.

Jeffrey S. Portnoy,
Amanda M. Jones,
for Defendant-Appellee.

/s/ Lisa M. Ginoza
Chief Judge

/s/ Keith K. Hiraoka
Associate Judge

/s/ Sonja M.P. McCullen
Associate Judge

8