# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued March 27, 2007          Decided May 29, 2007

No. 06-5149

WILLIAM C. KING,
APPELLANT

v.

ALPHONSO R. JACKSON, SECRETARY OF HOUSING AND URBAN
DEVELOPMENT,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 05cv01074)

*Robert C. Seldon* argued the cause for appellant. With him on the briefs was *Molly E. Buie.*

*Teal Luthy Miller*, Attorney, U.S. Department of Justice, argued the cause for appellee. With her on the brief were *Peter D. Keisler*, Assistant Attorney General, and *Marleigh D. Dover*, Special Counsel.

Before: SENTELLE, HENDERSON, and TATEL, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* TATEL.

TATEL, *Circuit Judge*: Appellant alleges that the Department of Housing and Urban Development (HUD) violated Title VII of the Civil Rights Act of 1964 by forcing him to resign for having opposed the Department's refusal to renew its 2003 Affirmative Employment Plan. The district court granted HUD's motion to dismiss for failure to state a claim on the grounds that Title VII only protects an employee's opposition to an "unlawful employment practice." 42 U.S.C. § 2000e-3(a). Because we agree with the district court that Title VII's definition of an "unlawful employment practice" does not include the Department's failure to renew its Affirmative Employment Plan, we affirm.

## I.

The events giving rise to this case began when a white male HUD employee sued the Department, alleging that its Affirmative Employment Plan (AEP) violated Title VII's prohibition on sex and race discrimination in employment. *Worth v. Jackson*, 377 F. Supp. 2d 177, 179 (D.D.C. 2005). HUD adopted its AEP in accordance with the Equal Employment Opportunity Commission's (EEOC) Management Directive 714 (MD-714), which provided for "[n]umerical goal setting where there [was] a manifest imbalance or conspicuous absence of minorities and women in the agency's work force." *King v. Jackson*, 468 F. Supp. 2d 33, 35 (D.D.C. 2006) (alterations in original) (internal quotation marks omitted).

Because MD-714 was due to be superseded in October 2003 by MD-715, which required no numerical goal setting, the district court ordered HUD to file a brief discussing the impact of the EEOC's "revocation/modification of MD-714 on the claims asserted by the plaintiffs." *Worth v. Martinez*, No. 02 Civ. 1576 (D.D.C. Aug. 20, 2003). In response, then-

Deputy Secretary Alphonso Jackson ordered Appellant William C. King—director of HUD's Office of Departmental Equal Employment Opportunity and principal advisor to the Secretary on HUD's equal employment program—to sign a declaration stating the following:

> Pursuant to EEOC Management Directive 714 ('MD-714'), HUD's Fiscal Year ('FY') 2003 Affirmative Employment Plan ('AEP') expires on September 30, 2003.
>
> The FY 2003 HUD AEP will not be renewed or reissued.

*King*, 468 F. Supp. 2d at 35 (quoting Compl. ¶ 28). Believing that "HUD's failure to have an affirmative employment plan in place would violate Title VII," King refused to sign the declaration. Compl. ¶ 6.

In his subsequently filed district court complaint, King alleged that HUD forced him to resign for refusing to sign the declaration and that by doing so the Department violated Title VII's "opposition clause." 42 U.S.C. § 2000e-3(a). That clause makes it "an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter." *Id.* Pursuant to Federal Rule of Civil Procedure 12(b)(6), the district court dismissed the complaint, holding that HUD's failure to renew its AEP did not amount to an "unlawful employment practice" within the meaning of the subchapter.

King now appeals. Our review is de novo. *Stewart v. Nat'l Educ. Ass'n*, 471 F.3d 169, 173 (D.C. Cir. 2006) (applying de novo standard to the district court's decision

granting a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)).

## II.

Although Title VII's opposition clause itself has no applicability to federal agencies, *see* 42 U.S.C. § 2000e(b) (defining "employer" to exclude federal agencies), we have held that a provision of the statute that does apply to federal agencies, 42 U.S.C. § 2000e-16(a), incorporates the statutory prohibitions that apply to private employers. *See George v. Leavitt*, 407 F.3d 405, 410–11, 417 (D.C. Cir. 2005) ("Title VII places the same restrictions on federal and District of Columbia agencies as it does on private employers, and so we may construe the latter provision in terms of the former.") (quoting *Singletary v. Dist. of Columbia,* 351 F.3d 519, 523–24 (D.C. Cir. 2003)) (internal quotation marks omitted).

To recover under the opposition clause, the plaintiff must have been discriminated against for opposing a practice "made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a). King argues that the term "unlawful employment practice" includes a violation of any provision of Title VII and that HUD's failure to renew its AEP violated subsection e-16(b)(1). Subsection e-16(b)(1) provides that:

> The Equal Employment Opportunity Commission shall—
>
> . . . be responsible for the annual review and approval of a national and regional equal employment opportunity plan which each department . . . shall submit in order to maintain an affirmative program of equal employment

> opportunity for all such employees and applicants for employment.

According to King, this subsection obligates federal agencies to maintain AEPs even when not required to do so by the EEOC.

Even if King has correctly interpreted subsection e-16(b)(1), his argument fails because, as the district court held, actions that violate subsection e-16(b)(1) are not "unlawful employment practices" as defined in the statute. Title VII carefully defines that term in two sections, e-2 and e-3. Entitled "Unlawful employment practices," section e-2 describes numerous actions qualifying for that label, such as firing or refusing to hire an individual "because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Section e-3, entitled "Other unlawful employment practices," lists additional employer actions that qualify. Neither section mentions a refusal to renew an affirmative action plan. Moreover, subsection e-16(b)(1) concerns only the EEOC's annual review of agency equal employment opportunity plans and, unlike sections e-2 and e-3, nowhere characterizes a violation of its terms as an "unlawful employment practice." Given this, and given Title VII's carefully constructed definition of "unlawful employment practice," subsection e-16(b)(1) may not serve as the basis for an opposition clause claim.

Alternatively, King argues that even if a subsection e-16(b)(1) violation fails to qualify as an unlawful employment practice, his opposition to such a violation nonetheless deserves protection because he reasonably believed that HUD's action was an unlawful employment practice. In support, King cites *Parker v. Baltimore & Ohio Railroad*, 652 F.2d 1012, (D.C. Cir. 1981), in which we held

that Title VII protects opposition to employer conduct that the plaintiff incorrectly—though reasonably—believes falls within the statute's definition of an "unlawful employment practice." *Id.* at 1019–20; *see also Moyo v. Gomez*, 40 F.3d 982, 985 (9th Cir. 1994) (stating that a plaintiff "would be able to state a retaliation claim if he could show that his belief that an unlawful employment practice occurred was 'reasonable.'").

This case is a far cry from *Parker*. There, the plaintiff contended that his employer's affirmative action plan amounted to unlawful discrimination in hiring—a characterization that, if correct, would have placed the employer's conduct squarely within the definition of an unlawful employment practice. *See* 42 U.S.C. § 2000e-2(a)(1) (making it an unlawful employment practice to "refuse to hire . . . any individual . . . because of such individual's race"). Reversing the denial of the plaintiff's motion for leave to amend his complaint, we held that even were the plan lawful—an issue we left unresolved—that would not extinguish the plaintiff's opposition clause claim because he reasonably believed the plan to be unlawful. *Parker*, 652 F.2d at 1020. Elsewhere in the opinion, we described the ambiguities in the case law, explaining that "the law of affirmative action under Title VII" was in an "unsettled state." *Id*. at 1020. Here, by contrast, nothing is unsettled. Because Title VII's extensive definition of the term "unlawful employment practice" never mentions an agency's failure to renew an affirmative action plan and because subsection e-16(b)(1) never uses that term, the legal principles at issue here, unlike in *Parker*, are entirely unambiguous. We thus think it quite unreasonable for King to have believed that a subsection e-16(b)(1) violation qualified as an unlawful employment practice.

Finally, King argues that by discontinuing the 2003 AEP HUD removed a "structural safeguard" against discriminatory hiring and thus committed an unlawful employment practice under the subsection that bans discriminatory hiring, 42 U.S.C. § 2000e-2(a). Appellant's Br. 24. But even if, as King suggests, HUD used its AEP to prevent discrimination, that does not convert the Department's refusal to extend the AEP into an act of discriminatory hiring. Therefore, because King does not allege that he opposed an act of discriminatory hiring, he may not use subsection e-2(a) as the basis for his opposition clause claim.

We affirm the district court's order dismissing the complaint.

*So ordered.*