15-3392-cv
*Cooper v. N.Y. State Dep't of Labor*

# In the

# United States Court of Appeals

## For the Second Circuit

————

AUGUST TERM 2015
No. 15-3392-cv

WINIFRED COOPER,
*Plaintiff-Appellant,*

*v.*

NEW YORK STATE DEPARTMENT OF LABOR,
*Defendant-Appellee.*[*]

————

Appeal from the United States District Court
for the Northern District of New York

————

ARGUED: APRIL 5, 2016
DECIDED: APRIL 26, 2016

————

Before: KEARSE, CABRANES, and CHIN, *Circuit Judges.*

————

---

[*] The Clerk of Court is directed to amend the official caption to conform with the caption above.

Plaintiff-appellant Winifred Cooper appeals an October 9, 2015 judgment of the United States District Court for the Northern District of New York (Glenn T. Suddaby, *Chief Judge*) dismissing, under Federal Rule of Civil Procedure 12(b)(6), claims based on Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), and the New York State Human Rights Law, N.Y. Exec. Law §§ 290 *et seq.* ("NYSHRL"). Cooper's complaint alleges that her former employer, defendant-appellee New York State Department of Labor, unlawfully retaliated against her for opposing an employment practice proscribed by Title VII and the NYSHRL. Concluding, as did the District Court, that Cooper could not reasonably have believed that the conduct she opposed violated either statute, we **AFFIRM**.

————

> CHRISTOPHER D. WATKINS, Sussman & Watkins, Goshen, NY, *for Plaintiff-Appellant.*
>
> BRIAN D. GINSBERG, Assistant Solicitor General (Barbara D. Underwood, Solicitor General, and Andrew B. Ayers, Senior Assistant Solicitor General, *on the brief*), *for* Eric T. Schneiderman, Attorney General of the State of New York, *for Defendant-Appellee.*
>
> Julie Salwen, Harrison, Harrison & Assoc., Ltd., Red Bank, NJ, *for Amicus Curiae National Employment Lawyers Association/New York, in support of Plaintiff-Appellant.*

————

PER CURIAM:

Plaintiff-appellant Winifred Cooper appeals an October 9, 2015 judgment of the United States District Court for the Northern District of New York (Glenn T. Suddaby, *Chief Judge*) dismissing, under Federal Rule of Civil Procedure 12(b)(6), claims based on Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), and the New York State Human Rights Law, N.Y. Exec. Law §§ 290 *et seq.* ("NYSHRL"). Cooper's complaint alleges that her former employer, defendant-appellee New York State Department of Labor ("defendant" or "DOL"), unlawfully retaliated against her for opposing an employment practice proscribed by Title VII and the NYSHRL. Concluding, as did the District Court, that Cooper could not reasonably have believed that the conduct she opposed violated either statute, we **AFFIRM**.

## BACKGROUND

This case arises out of defendant's decision, in April 2013, to remove Cooper from her position as Director of Equal Opportunity Development ("DEOD") for the DOL.[1] Prior to her removal, Cooper's responsibilities as DEOD included "ensur[ing] that [the DOL] complied with federal Equal Opportunity rules and

---

[1] We draw the facts from Cooper's amended complaint, accepting them as true and viewing them in the light most favorable to Cooper. *Galper v. JP Morgan Chase Bank, N.A.*, 802 F.3d 437, 443-44 (2d Cir. 2015).

regulations." J.A. 13.[2] In December 2012, she learned that the Governor's Office of Employee Relations ("GOER") had developed a plan to "alter the means by which internal [Equal Employment Opportunity ("EEO")] complaints were to be handled by state agencies, including the" DOL. *Id.*

Cooper believed that the proposed changes "materially conflicted with federal regulations" because they would "subject the EEO complaint response process to political pressure," increasing the likelihood that workplace discrimination would go unredressed. *Id.* In a series of communications with her supervisors, Cooper brought these concerns to light. J.A. 13-14.

Cooper's position carried the day—the GOER plan was altered to take account of her views—but, in April 2013, she was fired, allegedly in retaliation for having lobbied against GOER's proposal. J.A. 14-15. On that basis Cooper filed this lawsuit, seeking recovery under Title VII and the NYSHRL.[3] The District Court granted defendant's Rule 12(b)(6) motion to dismiss, *see Cooper v. N.Y. State Dep't of Labor*, No. 1:14 Civ. 717 (GTS) (CFH), 2015 WL 5918263 (N.D.N.Y. Oct. 9, 2015), and Cooper appealed.

---

[2] References to "J.A." are to the joint appendix.

[3] "Employment discrimination claims brought under the NYSHRL are analyzed identically to claims under . . . Title VII," *Brennan v. Metro. Opera Ass'n, Inc.*, 192 F.3d 310, 316 n.2 (2d Cir. 1999); thus, our analysis does not distinguish between Cooper's federal and state causes of action.

**DISCUSSION**

Reviewing the question *de novo*, *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 358 (2d Cir. 2013), we conclude that the District Court did not err in dismissing Cooper's complaint. Title VII's anti-retaliation provision prohibits employers from "discriminat[ing] against any individual . . . because he has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a). A plaintiff seeking to demonstrate that he engaged in protected activity need not show that the behavior he opposed in fact violated Title VII; he must, however, show that he "possessed a good faith, reasonable belief," *Summa v. Hofstra Univ.*, 708 F.3d 115, 126 (2d Cir. 2013), that the employer's conduct qualified as an "unlawful employment practice" under the statute, *see* 42 U.S.C. § 2000e-3(a).

Title VII is a "precise, complex, and exhaustive" statute, *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, --- U.S. ---, 133 S. Ct. 2517, 2530 (2013), and it defines the term "unlawful employment practice" with characteristic exactitude. An "unlawful employment practice" is "discrimination on the basis of any of seven prohibited criteria: race, color, religion, sex, national origin, opposition to employment discrimination, and submitting or supporting a complaint about employment discrimination." *Id.* at 2532; *see also* 42 U.S.C. § 2000e-2(a)-(d) (enumerating as an "unlawful employment practice" status-based discrimination by various entities); *id.* § 2000e-2(*l*) (enumerating as an "unlawful employment practice" status-based discrimination in "employment related tests"); *id.* § 2000e-3(a)

(enumerating as an "unlawful employment practice" retaliating against an individual for opposing conduct made unlawful by, or participating in a proceeding under, Title VII); *id.* § 2000e-3(b) (enumerating as an "unlawful employment practice" the advertising of a preference for applicants based on "race, color, religion, sex, or national origin"). Thus, a plaintiff alleging unlawful retaliation may not recover unless he reasonably believed that the conduct he opposed ran afoul of one of these particular statutory proscriptions. *See, e.g.*, *Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons*, 842 F.2d 590, 594 (2d Cir. 1988) (objecting to an employer's failure to adhere to its own affirmative-action program is not protected activity, because such a failure is not an "unlawful employment practice" under Title VII).

For this reason, Cooper is not entitled to relief. The conduct she opposed—the amendment of internal procedures in a manner that, she believed, would permit political considerations to influence the evaluation of discrimination claims—is not a "practice made an unlawful employment practice" by Title VII. 42 U.S.C. § 2000e-3(a). Nor could Cooper reasonably have believed otherwise. In defining with great care and precision those behaviors that qualify as "unlawful employment practices," the statute lays on employers no obligation to maintain any particular procedures for handling

internal complaints.  Indeed, the relevant provisions do not touch on the subject at all.[4]

Cooper contends that her activity was protected because she opposed a practice that, if adopted, would have increased the likelihood of future unredressed Title VII violations.  We cannot agree.  The same argument might be (indeed, has been) made about the abandonment of voluntary affirmative action programs, but opposing an employer's failure to engage in affirmative action is nevertheless unprotected under the statute.  *See Manoharan*, 842 F.2d at 594.  For instance, in *King v. Jackson*, the plaintiff alleged that the Department of Housing and Urban Development ("HUD") had violated Title VII by forcing him to resign because he had opposed HUD's decision to discontinue its Affirmative Employment Plan ("AEP"), a program calculated to rectify the "manifest imbalance or conspicuous absence of minorities and women in the agency's work force."  487 F.3d 970, 971 (D.C. Cir. 2007) (internal quotation marks omitted).  Contending that the AEP functioned as a "structural safeguard against discriminatory hiring," the plaintiff urged that HUD's decision to scrap the program would increase the likelihood of future discrimination and should therefore itself be viewed as an unlawful employment practice.  *Id.* at 973 (internal quotation marks omitted).  The court disagreed.  "Even if . . . HUD used its AEP to

---

[4] In view of this conclusion, we need not reach defendant's remaining argument in support of affirmance: that Cooper failed to plausibly allege that she reasonably believed that GOER's proposed procedures would increase the risk that political pressures would compromise the fair handling of discrimination claims.

prevent discrimination," it reasoned, "that does not convert the Department's refusal to extend the AEP into an act of discriminatory hiring." *Id.*

So too here. That Cooper sought to ensure that hypothetical victims of discrimination received a fair shake does not mean that she "possessed a good faith, reasonable belief," *Summa*, 708 F.3d at 126, that accepting GOER's proposal would have qualified as an "unlawful employment practice" under the statute, *see* 42 U.S.C. § 2000e-3(a). Simply put, her argument stretches our precedents and the text of Title VII well past their breaking points.

Perhaps tellingly, Cooper urges us to construe Title VII's retaliation clause "broadly" with an eye toward promoting the statute's "broad remedial purposes." Appellant's Br. 11. We are mindful that when an employer punishes an employee for conduct intended to secure equality in the workplace, it does little to further—and may hinder—Title VII's primary objective of eradicating invidious discrimination in employment. But "no legislation pursues its purposes at all costs." *CTS Corp. v. Waldburger*, --- U.S. ---, 134 S. Ct. 2175, 2185 (2014) (internal quotation marks omitted). We may not, in the name of advancing general aims, ignore Congress's choice to carefully circumscribe the universe of "unlawful employment practices"—and thus to circumscribe the universe of conduct protected from retaliation. *See id.* ("The Court of Appeals supported its interpretation . . . by invoking the proposition that remedial statutes should be interpreted in a liberal manner. The Court of Appeals was in error when it treated this as a

substitute for a conclusion grounded in the statute's text and structure."). Because Cooper did not engage in any such conduct, we must affirm the judgment of the District Court.

## CONCLUSION

In sum, Cooper could not reasonably have believed that in lobbying against GOER's proposal, she was opposing conduct that qualified as an "unlawful employment practice" under Title VII. We thus **AFFIRM** the October 9, 2015 judgment of the District Court.